**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-1155**

_____

TEAMSTERS LOCAL NO. 391, Affiliated with The
International Brotherhood of Teamsters,

Plaintiff - Appellant,

versus

BALL CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court for the Middle
District of North Carolina, at Durham.  N. Carlton Tilley, Jr.,
Chief District Judge.  (CA-01-404-1)

_____

Argued:  December 1, 2005            Decided:  December 21, 2005

_____

Before MOTZ, KING, and DUNCAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Seth R. Cohen, SMITH, JAMES, ROWLETT & COHEN, L.L.P.,
Greensboro, North Carolina, for Appellant.  James Marion Powell,
WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Greensboro, North
Carolina, for Appellee.  **ON BRIEF:** D. Ross Hamilton, Jr., WOMBLE,
CARLYLE, SANDRIDGE & RICE, P.L.L.C., Greensboro, North Carolina,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Teamsters Local 391 appeals the award of summary judgment granted in the Middle District of North Carolina to Ball Corporation on Local 391's breach of contract claim. Teamsters Local 391 v. Ball Corp., 355 F. Supp. 2d 803 (M.D.N.C. 2005). Local 391 instituted the present action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. By its complaint, Local 391 contends that Ball breached the parties' 2000 collective bargaining agreement (the "CBA") by failing to pay the balance of a "reserve fund" to Local 391's members, workers at Ball's plant in Reidsville, North Carolina. The reserve fund had been established by the CBA to facilitate a "gainsharing plan" at the Reidsville plant.[*]

In substance, the gainsharing plan allows production and maintenance workers to receive an annual bonus of up to, but not exceeding, five percent of their qualified earnings if the plant makes "gains," such as process improvements and increases in productivity. A self-funding provision in the plan requires all gainsharing payments in a plan year to be made from funds attributable to that year's gains. Accordingly, whether workers

_____

[*]The gainsharing plan has been in place at the Reidsville plant since 1995, and was originally negotiated by Ball's predecessor, Reynolds Metal Company. As relevant here, the gainsharing plan has been adopted verbatim in subsequent CBAs. Ball acquired Reynolds's interest in the Reidsville plant in 1998, and by referring to "Ball" we refer also to Reynolds.

2

receive all or any of the potential five-percent annual bonus depends upon whether, and to what extent, the plant realizes gains in a given plan year.

Although gains and losses are measured over an entire plan year, the plan provides for quarterly gainsharing payments. Such payments create a risk of overpayment in a year with positive gains in the early quarters and negative gains in the later quarters, potentially jeopardizing the self-funding requirement. In order to protect against such an overpayment risk, the plan calls for the creation of a reserve fund, into which a portion of the funds attributed to each quarter's gains are paid. In the event gains are negative in later quarters, the reserve fund can be used to reimburse Ball for gainsharing payments it has already made. Similarly, if employees are owed more gainsharing payments at the end of a plan year, the reserve fund can be used to satisfy their entitlements.

A provision in a Memorandum of Understanding (the "MOU") — incorporated into the gainsharing plan, which, in turn, is part of the CBA — requires that the balance of the reserve fund "be paid at the end of the year after accounting for any quarterly deficits." Relying upon that provision of the MOU, Local 391 seeks to recover for its members the balance of the reserve fund from plan year 2000. In so doing, Local 391 admits that its members received gainsharing payments for the 2000 plan year in an amount

3

equal to five percent of their qualified earnings, just as they had in all prior plan years in which the total gains justified such gainsharing payments. Nonetheless, Local 391 maintains that its members are further entitled to receive the reserve fund balance because the MOU requires that such balances "be paid at the end of the year."

The district court found that the provision of the MOU relied upon by Local 391 is facially ambiguous in that its text does not readily disclose to whom the reserve balance should be paid at the end of a plan year. Teamsters Local 391, 355 F. Supp. 2d at 809. After considering extrinsic evidence, however, the court determined that "no reasonable juror could find that the parties intended anything other than" that the five-percent cap would apply to the reserve fund and to the provision of the MOU relied upon by Local 391. Id. at 813. The court therefore concluded that, read in the context of the parties' prior dealings on the gainsharing plan (since 1995), the CBA unequivocally required that any balance in the reserve fund at the end of a plan year be paid to Ball. See id. Accordingly, the court granted Ball's motion for summary judgment. Id.

Upon careful consideration of the record and the parties' briefs and oral argument, we are unable to identify any error in the district court's well-reasoned decision. We are accordingly content to affirm on the basis of the district court's opinion.

4

See Teamsters Local 391 v. Ball Corp., 355 F. Supp. 2d 803 (M.D.N.C. 2005).

AFFIRMED